# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10-CV-229-TCK-PJC ) |
| ANTHONY L. SPENCER, and PATRICK G. WALTERS, individually and as Trustee of the Spencer Irrevocable Trust, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Defendant Patrick G. Walters' ("Walters") Motion to Dismiss (Doc. 7).

## I. Background

The following facts are alleged in the United States' Complaint. On July 3, 1997, Anthony Spencer ("Spencer") was charged with thirty-seven (37) criminal tax offenses, including one count of conspiracy, five (5) counts of subscribing to a false or fraudulent tax return, and thirty-one (31) counts of aiding and assisting the preparation of a fraudulent tax return. On January 23, 1998, Spencer pled guilty to all thirty-seven (37) criminal offenses, and he was thereafter sentenced to sixty (60) months in prison on count one, and to three (3) months in prison on each of the remaining counts. Spencer began serving his sentence on October 28, 1998.

In the time between his July 14, 1998 sentencing and his incarceration on October 28, 1998, Spencer transferred the entirety of his assets to others. Specifically, on October 9, 1998, Spencer's then-wife, Evelyn Caton ("Caton"), filed for divorce. Eleven days later, on October 20, 1998, Spencer and Caton agreed to a division of property whereby they each took approximately half of the marital assets. As a result of this agreement, Caton received all the real property owned in the marriage and Spencer received liquid assets. Thereafter, on October 22, 1998, Spencer wrote a letter

to Walters, wherein he estimated that he would owe the United States $2 or $3 million in taxes. Spencer instructed Walters to take his "entire worth" and make "enough money to pay off these suck-ass bastards or blow it all trying." (Oct. 22, 1998 Letter, Ex. 1 to Compl.) On October 28, 1998, Spencer executed a written agreement to place his purported "entire worth" in trust with Walters through the creation of the Spencer Irrevocable Trust ("Trust"). The corpus of the Trust consisted of a $610,000 check drawn on Caton's bank account dated October 22, 1998, which represented all of Spencer's remaining assets after the divorce. The trust agreement provided that Spencer was the sole designated beneficiary but entitled him to the "residue of the Trust" only "upon final payment of [Spencer's] income tax liability." (Trust, Ex. 2 to Compl., at Article III.B.) The $610,000 was given to the Trust with "little or inadequate consideration," and Spencer was left insolvent after transferring these assets to the Trust. (Compl. ¶¶ 20, 21.)

The United States alleges that Walters abused his position as trustee of the Trust because: (1) he did not pay any money from the Trust to the United States to cover any portion of Spencer's income tax liability; and (2) rather than "invest[ing] the funds . . . to repay [Spencer's] proposed tax liability," as was provided for in the Trust, (Trust, Ex. 2 to Compl., at Article IV.A.1), Walters "used the trust funds for his own personal benefit and in violation of his fiduciary duties as trustee," (Compl. ¶ 24). The Complaint contains specific allegations outlining how Walters used funds from the Trust for his personal benefit. First, Walters paid James Garland ("Garland"), with whom he had a personal and business relationship, $200,000 in order to assist Garland in "engag[ing] in fraudulent transfers 'meant to keep Garland one step ahead of the IRS's collections actions against him.'" (*Id.* ¶ 26 (quoting *In re Garland*, 385 B.R. 280, 292 (Bankr. E.D. Okla. 2008).) This money was not repaid to the Trust, and Walters did not take any action to recoup this money from Garland. Second,

2

Walters paid Joe Branscum ("Branscum") $100,000 from the Trust as a purported investment in NBFB, Inc. However, NBFB, Inc. was only authorized to issue 50,000 shares of stock at $1 per share, and Walters did not obtain repayment for or account for the $50,000 he gave to Branscum that was not used to purchase the 50,000 shares of stock. Further, Walters did not give any of the 50,000 shares of stock to Spencer, nor has Spencer received any money from NBFB, Inc. Third, Walters made payments from the Trust to subsidize 5001-5013 N. Peoria LLC, a business entity in which Walters retained managerial control. In so doing, Walters "placed the [Trust] into a partnership with Walters and . . . mingled assets under his personal control . . . with assets of the [Trust]." (*Id.* ¶ 37.) Fourth, Walters made payments from the Trust to Joe Linkenheimer ("Linkenheimer"). Walters and Linkenheimer shared an office, and the payments to Linkenheimer were for the "personal benefit of Walters and not for Spencer." (*Id.* ¶ 40.) Finally, the Complaint alleges that "Walters did not maintain accurate books of the Trust's assets and 'investments' [or] provide an annual accounting." (*Id.* ¶ 42.)

Spencer was released from prison on November 30, 2001. Following his release, Spencer contacted Walters on multiple occasions regarding the status of the Trust. After not receiving a response from Walters, Spencer wrote Walters a letter dated October 21, 2002, wherein he outlined his attempts to get information about the Trust, claimed that Walters had refused "to handle [Spencer's] investment portfolio in a normal and reasonable manner," and demanded that Walters return his entire portfolio. (Oct. 21, 2002 Letter, Ex. 4 to Compl.) Spencer also stated that, "[d]uring our business relationship and when I put my entire worldly assets in your care, you expressed the need for trust in each other. I have kept my trust in you, however, you failed." (*Id.*) The Complaint alleges that Walters never returned any assets from the Trust to Spencer. Spencer

3

subsequently sued Walters in the District Court for Tulsa County, alleging claims for, *inter alia*, breach of contract and breach of fiduciary duty. The Complaint states that this suit is still pending. (*See* Compl. ¶ 46.)

In this action, the United States alleges three claims against Walters. First, the United States alleges that Spencer fraudulently conveyed his assets to Walters and that the United States may recover from Walters, as a transferee, for Spencer's unpaid income tax liability.[1] Alternatively, the United States claims that if the Trust was truly created for the purpose of paying off Spencer's tax debts, Walters breached the Trust and his fiduciary duties, and the United States is entitled to damages from these breaches as an intended third-party beneficiary of the Trust. Finally, the United States also requests that the Court impose a constructive trust on all assets of the Trust. Walters has moved to dismiss these counts for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting

---

[1] The Complaint does not state the precise legal basis for the United States' transferee liability claim. In its response to Walters' Motion to Dismiss, the United States clarifies that such claim is brought under Oklahoma's Uniform Fraudulent Transfer Act ("UFTA"), Okla. Stat. tit. 24, § 112, *et seq.*

4

*Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," and that whether a defendant receives fair notice "depends on the type of case." *Id.*

**III.  Discussion**

Walters offers five arguments in support of his Motion to Dismiss. Specifically, Walters moves to dismiss the claims against him, arguing that: (1) the United States cannot seek transferee liability against Walters because it has not issued a notice of deficiency under 26 U.S.C. § 6901 ("Section 6901"); (2) the statute of limitations for pursuing transferee liability under Section 6901

5

has run, barring any claim to recover from Walters as a transferee; (3) the United States lacks standing to assert a claim for breach of fiduciary duty; (4) the statute of limitations bars the United States' claim for breach of fiduciary duty; and (5) the United States' request for a constructive trust fails because no other right of recovery exists in the Complaint.[2]

### A. Notice of Deficiency Requirement

Walters first cites to Section 6901, arguing that the United States cannot recover from Walters as Spencer's transferee because it did not give Walters a notice of deficiency, as is required by Section 6901. *See* 26 U.S.C. § 6901(a) (providing that enforcement of taxpayer liability against transferee shall be "assessed, paid and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred"); 26 U.S.C. § 6212 (establishing procedure for assessing liability against taxpayer, including issuance of notice of deficiency); *Colo. Gas. Compression, Inc. v. United States*, No. 06-cv-01101-LTB-MJW, 2006 WL 3054311, at *3 (D. Colo. Oct. 26, 2006) (explaining that "[section 6901(a)] requires that transferee liability be assessed using the same procedural requirements as any

---

[2] In his reply brief, Walters asserts additional arguments for the first time. Specifically, Walters contends: (1) the United States has not adequately pled a claim against Walters in his individual capacity, (*see* Def.'s Reply to United States' Opp'n to Mot. to Dismiss 5-6); (2) the United States' "cause for breach of contract should be dismissed against [W]alters in his individual capacity," (*id.* 7); and (3) the United States lacks standing to assert a breach of contract, (*see id.* at 7-8). However, because these grounds for dismissal were not included in Walters' Motion to Dismiss, they are not properly before the Court, and the Court will not consider them. *See, e.g., Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."); *Vandever v. Osage Nation Enter., Inc.,* No. 06-CV-380-GKF-TLW, 2009 WL 702776, at *6 (N.D. Okla. March 16, 2009) ("[T]he court declines to rule at this time on the argument raised for the first time in defendants' reply to plaintiffs' response to defendants' Motion to Dismiss.").

other assessment, which includes 90-day notice of any potential deficiency"). In its response brief, the United States clarifies that its claim for transferee liability does not arise under Section 6901. The United States therefore argues that it need not have assessed Walters under such statutory scheme.

As explained by the Tenth Circuit, "the collection procedures contained in [Section] 6901 are not exclusive and mandatory, but are cumulative and alternative to other methods of tax collection recognized and used prior to the enactment of [Section] 6901 and its statutory predecessors." *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972) (holding trial court erred in granting summary judgment against United States based on fact that United States did not comply with procedures of Section 6901 in assessing transferee tax liability); *see, e.g., United States v. Perrina*, 877 F. Supp. 215, 217 (D.N.J. 1994) ("It is clear that [Section] 6901 is not an exclusive remedy, but was enacted as an alternative, cumulative remedy."). In this case, the United States has stated that it is seeking to impose transferee liability on Walters through the UFTA, and not through Section 6901. (*See* United States' Opp'n to Def. Walters' Mot. to Dismiss 6.) Walters' argument regarding the United States' failure to follow the procedure in Section 6901 is therefore moot.

Additionally, the Court rejects Walters' contention, set forth in his reply brief, that the United States' factual allegations are not specific enough to plead a violation of the UFTA. The Complaint sets forth detailed factual allegations regarding the creation of the Trust, including an allegation regarding inadequate consideration, Spencer's insolvency, and the alleged attempts to circumvent the collection of Spencer's tax liability. The Complaint further details Walter's allegedly fraudulent actions as trustee of the Trust. These allegations gave Walters adequate notice

7

of the United States' claim of transferee liability, and are sufficiently detailed to withstand a motion to dismiss.

B. **Statute of Limitations for Pursuing Transferee Liability**

Second, Walters argues that the United States' claim to impose transferee liability is time barred. The Court declines to dismiss the United States' claim on this basis. To the extent Walters relies on the limitations period applicable to Section 6901, as discussed above, the United States' claim for transferee liability is not brought pursuant to Section 6901. Further, to the extent Walters contends that the United States' claim is barred by the four-year statute of limitations contained in the UFTA, it is clear that this limitations period does not apply to the United States, as the "United States is not bound by state statutes of limitation . . . in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see United States v. Spence*, Nos. 99-2325, 99-2345, 2000 WL 1715216, at *3 (10th Cir. Nov. 15, 2000) (internal quotations omitted) (finding four-year statute of limitations provided by New Mexico Uniform Fraudulent Transfer Act inapplicable to United States' claim to set aside a fraudulent transfer to collect tax assessments) (citing *Summerlin*, 310 U.S. at 416, and *Bd. of Cnty. Comm'rs for Garfield Cnty., Colo. v. W.H.I., Inc.*, 992 F.2d 1061, 1065 (10th Cir. 1993) ("[A] state's statute of limitations does not apply to an action brought by the federal government to vindicate public rights or public interests, absent a clear showing of contrary congressional intent.")); *Bresson v. C.I.R.*, 213 F.3d 1172, 1178-79 (9th Cir. 2000) (holding United States is not subject to the extinguishment provision contained in California's version of the Uniform Fraudulent Transfer Act); *United States v. Holmes*, No. 08-cv-02446-WDM-CBS, 2010 WL 2754834, at *1 (D. Colo. July 12, 2010) (holding United States was not bound to four-year statute of limitations under the Colorado Uniform Fraudulent Transfer Act pursuant to *Summerlin*).

The Court therefore rejects Walters' argument that the United States' claim to impose transferee liability is time barred.

### C. Standing to Assert Breach of Fiduciary Duty Claim

Third, Walters argues that the United States does not have standing to bring a breach of fiduciary duty claim because the United States is not a third-party beneficiary of the Trust. In support of this argument, Walters argues that the Trust "neither contains an express identification of such beneficial interest nor any legally enforceable promise." (Def.'s Mot. to Dismiss 7.)

Under Oklahoma law, in order to be a third-party beneficiary to a contract, "[i]t is not necessary that the party be specifically named a beneficiary." *Keel v. Titan Const. Corp*, 639 P.2d 1228, 1231 (Okla. 1981)." Rather, "[a] third-party beneficiary of a contract may avail himself of its benefits and maintain an action thereon notwithstanding he was a stranger thereto, had no knowledge of the contract, and was not identified therein when it was made if it appears the parties intended to recognize him as a beneficiary." *Id.*; *see also Copeland v. Admiral Pest Control Co.*, 933 P.2d 937, 939 (Okla. Civ. App. 1996) ("It is not necessary that third-party beneficiaries be specifically identified at the time of contracting, but it must appear that the contract was expressly made for the benefit of a class of persons to which the party seeking enforcement belongs."); *United States v. State Farm Mut. Auto. Ins. Co.*, 455 F.2d 789, 790-92 (10th Cir. 1972) (holding United States was third-party beneficiary of serviceman's medical payments coverage even though United States was not explicitly named in insurance policy) ("It is a general rule that where the third-party beneficiaries are so described to be ascertainable, it is not necessary that they be specifically named in the contract in order to recover thereon and it is not necessary that they be identifiable at the time the contract is made.") (applying Oklahoma law). Further, with regard to a trust agreement, as is at

9

issue here, a party is a beneficiary of a trust if that party is "entitled to receive from a trust any benefit of whatsoever kind or character." Okla. Stat. tit. 60, § 175.3.

In this case, while Walters is correct that the United States is not explicitly mentioned in the Trust, the terms of the Trust, when viewed in a light most favorable to the United States, suggest that the parties intended the United States to be a beneficiary of the Trust. Specifically, the Trust states as follows:

> DESIGNATED BENEFICIARY: The designated beneficiary of the Trust is in fact ANTHONY L. SPENCER of Tulsa, Tulsa County, State of Oklahoma. *The aforementioned beneficiary shall receive upon final payment of his income tax liability, all residue of the Trust.* Payment to be made in four years.
> . . .
> The trustee shall invest all funds held within said trust in any instrument he judges will return a rate high enough to repay Anthony Spencers [sic] proposed *tax liability*.

(Trust, Ex. 2 to Compl., at 2.) This language indicates that the purpose of the Trust was to generate money to pay Spencer's tax liability, as (1) the only payment Spencer was to receive was contingent on the satisfaction of his tax liability, and (2) the Trust instructs the trustee to make investments with a high enough rate of return to repay Spencer's tax liability. Therefore, considering the language of the Trust and construing all facts in favor of the United States, the Court is unwilling to dismiss the Complaint based on Walters' assertion that the United States is not a third-party beneficiary of the Trust.

### D. Statute of Limitations for Breach of Fiduciary Duty Claim

Fourth, Walters argues that the United States' breach of fiduciary duty claim is subject to a two-year statute of limitations and is therefore time barred. (*See* Def.'s Mot. to Dismis 7-8 ("Clearly, a claim by the IRS filed in 2010 concerning actions which occurred in 1998, and were clearly known by at least 2002 are barred by the state's two year statute of limitations.").) As

10

discussed above, the United States is not bound by state statutes of limitation in enforcing its rights. *See Summerlin*, 310 U.S. at 416; *see also Spence*, 2000 WL 1715216, at *3; *Harp v. United States*, 173 F.2d 761, 763 (10th Cir. 1949) ("It is well settled that in ordinary circumstances state statutes of limitation are not applicable to actions brought by the United States.") (further explaining that "[i]t lies within the power of Congress to provide by act that statute statutes of limitation shall have application to suits instituted by the United States"); *United States v. Johnson*, 946 F. Supp. 915, 918 (D. Utah 1996) ("The United States Supreme Court and the lower courts of appeals have consistently held that the United States and its agencies are not bound by state statute of limitations in enforcing the rights of the United States government."). The Court is therefore unwilling to dismiss the United States' breach of fiduciary claim due to Oklahoma's two-year statute of limitations.

### E. Constructive Trust

Finally, Walters argues that because "the substantive claims alleged by the [United States] are invalid (for the reasons discussed in [the Motion to Dismiss]), there is no cause of action against Defendant Walters to which the remedy of a constructive [trust] can attach." (Def.'s Mot. to Dismiss 9.) Because the Court rejects Walters' various arguments in support of dismissal, as outlined above, dismissal of the United States' request for a constructive trust is not appropriate.

## IV. Conclusion

For the reasons outlined herein, Defendant Walters' Motion to Dismiss (Doc. 7) is DENIED.

**IT IS SO ORDERED this 17th day of February, 2011.**

*/s/ Terence Kern*
**TERENCE KERN**
**United States District Judge**