## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.  10-CV-229-TCK-PJC** |
| | ) | |
| **ANTHONY L. SPENCER, and PATRICK** | ) | |
| **G. WALTERS, individually and as** | ) | |
| **Trustee of the Spencer Irrevocable Trust,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is the United States' Motion to Dismiss Patrick G. Walters' ("Walters")

Counterclaim (Doc. 27).

### I.    Background

The following facts are alleged in the United States' Complaint.  On July 3, 1997, Anthony

Spencer ("Spencer") was charged with thirty-seven (37) criminal tax offenses, including one count

of conspiracy, five (5) counts of subscribing to a false or fraudulent tax return, and thirty-one (31)

counts of aiding and assisting the preparation of a fraudulent tax return.  On January 23, 1998,

Spencer pled guilty to all thirty-seven (37) criminal offenses, and he was thereafter sentenced to

sixty (60) months in prison on count one, and to three (3) months in prison on each of the remaining

counts.   Spencer began serving his sentence on October 28, 1998.

In the time between his July 14, 1998 sentencing and his incarceration on October 28, 1998,

Spencer transferred the entirety of his assets to others.  Specifically, on October 9, 1998, Spencer's

then-wife, Evelyn Caton ("Caton"), filed for divorce.  Eleven days later, on October 20, 1998,

Spencer and Caton agreed to a division of property whereby they each took approximately half of

the marital assets.  As a result of this agreement, Caton received all the real property owned in the

marriage and Spencer received liquid assets.  Thereafter, on October 22, 1998, Spencer wrote a letter to Walters, wherein he estimated that he would owe the United States $2 or $3 million in taxes. Spencer instructed Walters to take his "entire worth" and make "enough money to pay off these suck-ass bastards or blow it all trying."  (Oct. 22, 1998 Letter, Ex. 1 to Compl.)  On October 28, 1998, Spencer executed a written agreement to place his purported "entire worth" in trust with Walters through the creation of the Spencer Irrevocable Trust ("Trust").  The corpus of the Trust consisted of a $610,000 check drawn on Caton's bank account dated October 22, 1998, which represented all of Spencer's remaining assets after the divorce.  The trust agreement provided that Spencer was the sole designated beneficiary but entitled him to the "residue of the Trust" only "upon final payment of [Spencer's] income tax liability."  (Trust, Ex. 2 to Compl., at Article III.B.)  The $610,000 was given to the Trust with "little or inadequate consideration," and Spencer was left insolvent after transferring these assets to the Trust.  (Compl. ¶¶ 20, 21.)

Spencer was released from prison on November 30, 2001.  Following his release, Spencer contacted Walters on multiple occasions regarding the status of the Trust.  After not receiving a response from Walters, Spencer wrote Walters a letter dated October 21, 2002, wherein Spencer outlined his attempts to get information about the Trust, accused Walters of refusing "to handle [Spencer's] investment portfolio in a normal and reasonable manner," and demanded that Walters return his entire portfolio.  (Oct. 21, 2002 Letter, Ex. 4 to Compl.)  Spencer also stated that, "[d]uring our business relationship and when I put my entire worldly assets in your care, you expressed the need for trust in each other.  I have kept my trust in you, however, you failed."  (*Id.*) The Complaint alleges that Walters never returned any assets from the Trust to Spencer.  Spencer subsequently sued Walters in the District Court for Tulsa County, alleging claims for, *inter alia*,

breach of contract and breach of fiduciary duty.  The Complaint states that this suit is still pending. (*See* Compl. ¶ 46.)

The United States then brought suit against Walters, claiming that Spencer fraudulently conveyed his assets to Walters and that the United States may recover from Walters, as a transferee, for Spencer's unpaid income tax liability.  Alternatively, the United States claims that if the Trust was truly created for the purpose of paying off Spencer's tax debts, Walters breached the Trust and his fiduciary duties, and the United States is entitled to damages from these breaches as an intended third-party beneficiary of the Trust.[1]  Finally, the United States requests that the Court impose a constructive trust on all assets of the Trust.[2]

Walters subsequently filed a Counterclaim against the United States, which provides a lengthy history of Walters' relationship with the IRS and alleges that the IRS has "set about to systematically harass, threaten, and intimidate [him] to thwart and discourage his testimony in cases opposing [the IRS.]" (Countercl. 2.) Walters' Counterclaim includes allegations dating back to 1980 in matters largely unrelated to the instant suit.  Based on such allegations, Walters seeks a declaration that the United States "has, and continues, to harass and retaliate against Walters in violation of his rights under the First, Fourth and Fifth Amendments to the Constitution of the

---

[1]  The United States alleges that Walters abused his position as trustee of the Trust because: (1) he did not pay any money from the Trust to the United States to cover any portion of Spencer's income tax liability; and (2) rather than "invest[ing] the funds . . . to repay [Spencer's] proposed tax liability," as was provided for in the Trust, (Trust, Ex. 2 to Compl., at Article IV.A.1), Walters "used the trust funds for his own personal benefit and in violation of his fiduciary duties as trustee," (Compl. ¶ 24).  The Complaint also alleges that "Walters did not maintain accurate books of the Trust's assets and 'investments' [or] provide an annual accounting."  (*Id.* ¶ 42.)

[2]  Walters moved to dismiss the United States' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), but said motion was denied by the Court.  (*See* Doc. 20.)

United States." (Countercl. at 20.) Walters also asks the Court "to permanently enjoin the United States from further acts of harassment and reprisal in violation of [Walter's] rights under the Constitution of the United States." (*Id.*) The United States has moved to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), arguing, *inter alia*, that the United States enjoys sovereign immunity from suit and this Court is therefore without subject matter jurisdiction.[3]

## II.    Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Winnebago Tribe of Neb. v. Kline*, 297 F. Supp. 2d 1291, 1299 (D. Kan. 2004). When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed. *Id.*

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id.* "In reviewing a facial attack, the district court must accept the allegations

---

[3] The United States also argues that the Counterclaim should be dismissed because "no justiciable 'actual controversy' exists within the meaning of the Declaratory Judgment Act," (Mot. to Dismiss Counterclaim 4), and the Counterclaim is barred by the Anti-Injunction Act and the Declaratory Judgment Act. Because the Court finds that the United States is immune from suit, it need not address these arguments.

in the complaint as true." *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.* "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)). "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225. In this case, the United States' Motion to Dismiss is a facial attack on Walters' Counterclaim.

## III.   Discussion

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (internal citations omitted); *see Fostvedt v. United States*, 978 F.2d 1201, 1202 (10th Cir. 1992) ("The United States may not be sued without its consent."). In general, federal agencies and officers acting in their official capacities are also shielded by sovereign immunity. *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Merida Delgado*, 428 F.3d at 919. Finally, " [s]uch a waiver of sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute." *Fostvedt*, 978 F.2d at 1202.

In this case, Walters does not point to an explicit statutory waiver of sovereign immunity by the United States. Rather, Walters asserts that his counterclaim "falls within the 'unconstitutional acts' exception to sovereign immunity," (Resp. to Mot. to Dismiss 3), as specifically articulated in

*Kelly v. United States*, 69 F.3d 1503 (10th Cir. 1995) and *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). In *Kelly*, the Tenth Circuit affirmed the constitutionality of a portion of the Federal Aviation Administration Authorization Act of 1994. In so doing, the court reiterated "one of the well-established exceptions to the doctrine [of sovereign immunity, which] limits its application in declaratory and/or injunctive suits against federal entities or officials seeking to enjoin the enforcement of an unconstitutional statute." *Kelly*, 69 F.3d at 1507. There is no support in *Kelly* for a broad exception to sovereign immunity when a party complains about allegedly "unconstitutional acts," as claimed by Walters. Rather, *Kelly* confirms that a party may challenge the enforcement of an unconstitutional statute. Because Walters' counterclaim does not mount such a challenge, the exception articulated in *Kelly* is inapplicable to this case.

In *Wyoming*, the State of Wyoming brought suit against the federal government, challenging the refusal of the United States Fish and Wildlife Service to permit the state to vaccinate elk on the National Elk Refuge. Walters cites *Wyoming* for its recitation of the following:

> Two narrow exceptions to the general bar against suits seeking specific relief from the United States exist. A court may regard a government officer's conduct as so 'illegal' as to *permit a suit for specific relief against the officer as an individual* if (1) the conduct is not within the officer's statutory powers or, (2) those powers, or their exercise in the particular case, are unconstitutional.

*Wyoming*, 279 F.3d at 1225 (emphasis added). Walters' Counterclaim is not asserted "against [an] officer as an individual," however, rendering the exception mentioned in *Wyoming* inapplicable to this case. Because Walters has failed to point to any other authority in support of the asserted "'unconstitutional acts' exception to sovereign immunity," (Resp. to Mot. to Dismiss 3), and because Walters had not identified a specific waiver of sovereign immunity, the Court lacks jurisdiction over Walter's Counterclaim.

6

**IV.**      **Conclusion**

For the reasons outlined herein, the United States' Motion to Dismiss Patrick G. Walter's

Counterclaim (Doc. 27) is GRANTED.


**IT IS SO ORDERED this 24th day of February, 2012.**


**TERENCE KERN**
**United States District Judge**