## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-CV-229-TCK-PJC |
| | ) | |
| ANTHONY L. SPENCER, and PATRICK | ) | |
| G. WALTERS, individually and as | ) | |
| Trustee of the Spencer Irrevocable Trust, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are the United States' Motion for Summary Judgment or Partial Summary

Judgment Against Patrick Walters (Docs. 40, 45) and Defendant Patrick G. Walters', Individually

and as Trustee of the Spencer Irrevocable Trust, Motion for Summary Judgment (Doc. 48).

I.      **Background**

The following facts are derived from the summary judgment record.

A.      **Spencer's Criminal Conviction**

On July 3, 1997, Anthony Spencer ("Spencer") was charged with 37 criminal tax offenses,

including one count of conspiracy, 5 counts of subscribing to a false or fraudulent tax return, and

31 counts of aiding and assisting the preparation of a fraudulent tax return. On January 23, 1998,

Spencer pled guilty to all 37 criminal offenses. Defendant Patrick Walters ("Walters"), a Tulsa

accountant, served as Spencer's expert witness regarding corporate taxation issues during his

sentencing hearing. Walters testified as to his opinion that Spencer owed no taxes and was actually

entitled to a refund, which the court rejected.[1]  On July 14, 1998, the court sentenced Spencer to 63

months, which he began serving on October 28, 1998.

**B.      Spencer's Receipt of 1998 Tax Examination Letter, Opening of Bank One
            Account, and Receipt of $610,000 Check**

In April 1998, the Internal Revenue Service ("IRS") audited Spencer's income tax returns

for the years 1991-1994.  Walters served as Spencer's power of attorney during this audit.  On

September 29, 1998, prior to Spencer's report date, the IRS sent Spencer and Walters a document

entitled "Tax Examination Changes" calculating Spencer's back-due taxes in the amount of

$495,552.84 ("1998 Tax Examination Letter").  On October 20, 1998, Spencer opened a checking

account at Bank One ("Bank One Account").  Two days later, on October 22, 1998, Spencer

received a $610,000.00 check from Evelyn Caton ("Caton") as part of their divorce settlement.

Either Spencer, or Caton at Spencer's direction, deposited this $610,000.00 check into the Bank One

Account.  On or before October 27, 1998, Spencer made Walters a joint owner of the Bank One

Account.

**C.      Spencer's Creation of the Spencer Irrevocable Trust**

On October 27, 1998, one day prior to his incarceration, Spencer wrote the following letter

to Walters ("10/27/98 Letter"):

> Dear Patrick,
> As you know, I have certain I.R.S. problems that include owing the I.R.S. a lot of
> money.  I am going to jail.  I want you to take my entire worth and invest, then
> reinvest it, and do this over and over till you either make me enough to pay the I.R.S.
> or lose it all trying.  These I.R.S. Bastards, after all their legal adding up, will claim

---

[1]  Former United States District Judge Michael Burrage asked Walters: "Are you up here
telling me that if you don't pay the money in, then you are still entitled to a refund?" (Tr. of
Sent. Hr'g, Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 97.)  Walters testified that he would
"argue that" and that believed he has a "good chance of winning it."  (*Id.*)

> I owe 2 or 3 million I am sure.  My current worth won't pay the electric bill on the computer time they will use trying to fuck over me.  You are hereby charged, actually commanded, to make me enough money to pay off these suck-ass bastards or blow it all trying.

(Def.'s Mot. for Summ. J., Ex. 14.)  On October 28, 1998, the day Spencer began serving his sentence, Spencer and Walters executed an Irrevocable Trust Agreement ("Trust Agreement") creating the Spencer Irrevocable Trust ("Trust"), of which Walters was the sole trustee.  The Trust Agreement contained the following "Designated Beneficiary" provision:

> ARTICLE III
> B.    DESIGNATED BENEFICIARY:  The designated beneficiary of this Trust is in fact ANTHONY L. SPENCER of Tulsa, Tulsa County, State of Oklahoma.  The aforementioned beneficiary shall receive upon final payment of his income tax liability, all residue of the Trust.  Payments to be made in four years.

(Pl.'s Mot. for Summ. J., Ex. 17.)  With respect to Walters' powers as trustee, the Trust Agreement provides:

> ARTICLE IV
> A.    Powers:  The Trustee shall act independently and free from control of any court and shall have all the powers conferred upon trustees by the Oklahoma Trust Act or under the corresponding statute of any other state in which this trust or any part thereof is then being administered, and by any future amendments to the Oklahoma Trust Act or such other statutory provisions may conflict with the express provisions of this Agreement, in which case the provisions of this Agreement shall control.  In addition to such powers, I direct the trustees without court approval:
> 1.    The trustee shall invest all funds held within said trust in any instrument he judges will return a rate high enough to repay Anthony L. Spencers proposed tax liability.  This will lead to great risk.
> 2.    The Trustee may make high risk investments with the desire to either create a great income or huge loss.  I understand the risk involved in these investments.  All risk shall be taken.

(*Id.*)  The terms of the Trust Agreement are consistent with the intent stated by Spencer in the 10/27/98 Letter – namely, for Walters to make high-risk, large-return investments of Spencer's assets, for the end purpose of paying tax liability.  Nonetheless, Spencer acknowledged the

possibility of "huge loss" and therefore that the funds may be depleted prior to any payment to himself or the IRS.

### D.     Walter's Creation and Dissipation of the Trust Account

On October 30, 1998, after Spencer reported to prison, Walters wrote a $495,000.00 check from the Bank One Account payable to the Spencer Irrevocable Trust and deposited the check into a newly created account at Valley National Bank ("Trust Account"). On the same date, Walters applied to the IRS for an Employer Identification Number for the Trust, identifying himself as the trustee. Over the next few months, Walters made various withdrawals from the Trust Account, including two withdrawals of $200,000.00 or more. Walters contends that these withdrawals were investments contemplated by the Trust Agreement, while the United States contends that Walters' "investments" actually amounted to self-dealing and breaches of fiduciary duty. On November 1, 1998, Walters made an additional $100,000.00 withdrawal from the Bank One Account, which he allegedly invested in a friend's corporation. Within a relatively short amount of time and certainly well prior to the four-year Trust period, Walters expended substantially all the funds from the Trust Account and Bank One Account. No money from either the Bank One Account or the Trust Account was ever paid to the IRS or Spencer.

### E.     Spencer's Stipulation to Taxes Owed

On March 10, 2003, after being released from prison, Spencer stipulated in tax court that he owed a total amount of $312,683.00 in back taxes and also agreed that interest would be assessed as provided by law. On April 28, 2003, the IRS assessed tax, penalty, and interest against Spencer in accordance with this stipulation ("2003 Tax Assessment"). As of December 12, 2011, according

to the Declaration of IRS agent Alan Ambuchl, Spencer's liability for tax years 1991-1994 totaled $882,991.07.

### F.    2005 State Court Action - Spencer's Suit Against Walters

On March 28, 2005, Spencer filed suit against Walters and several others in Tulsa County district court, CJ-2005-1857 ("2005 State Court Action"), asserting claims against Walters for breach of contract, breach of fiduciary duty, and fraudulent transfer. On February 1, 2008, the IRS filed a Notice of Levy in the 2005 State Court Action claiming that Spencer owed a certain amount in overdue taxes. On May 16, 2008, the trial judge granted summary judgment in favor of Walters based upon expiration of the statute of limitations. On February 23, 2009, the Oklahoma Court of Civil Appeals reversed this decision as to the breach of contract and breach of fiduciary duty claims and remanded such claims for further proceedings, but the appellate court affirmed the decision as to Spencer's fraudulent transfer claim. Following remand, Spencer failed to respond to Walters' motion for summary judgment, and all facts therein were deemed confessed. On January 19, 2012, the court granted summary judgment in favor of Walters.

### G.    2009 Federal Action - Caton's Suit Against United States

On January 8, 2009, Caton filed a federal lawsuit against the IRS in the Northern District of Oklahoma ("2009 Federal Action") seeking (1) to quiet title against the United States for nominee liens that the IRS imposed on certain property allegedly belonging solely to Caton; (2) enjoin the United States from levying on property in order to satisfy the tax debt of Spencer; and (3) damages for harm to Caton's property. As an affirmative defense, the United States asserted that Spencer fraudulently transferred assets to Caton: "[A]fter both Spencer and [Caton] knew of Spencer's enormous federal tax debt, Spencer transferred half of his property to Plaintiff by way of an

Oklahoma state divorce decree in order to prevent the United States from using that property to satisfy his federal tax obligations." (*Caton v. United States*, 09-CV-11-JHP (N.D. Okla.), Doc. 27.) A few weeks before trial, the parties reached a settlement whereby Caton paid the United States $180,000.00 and agreed that the United States could retain $63,000.00 it had already received through the IRS levy, for a total settlement of $243,000.00. The parties filed a Stipulation for Dismissal with Prejudice on February 18, 2010.

### H.      This Action - United States' Suit Against Spencer and Walters

On April 13, 2010, the United States filed the instant case against Spencer and Walters, both in his individual capacity and as trustee of the Trust. In Count 1, the United States sought a money judgment against Spencer for unpaid taxes for the years 1991-1994 and 1998. On May 25, 2010, the United States voluntarily dismissed its claim against Spencer. In Count 2, the United States alleges that Spencer fraudulently conveyed his property to Walters with the intent to hinder, defraud, or delay payment of Spencer's tax liabilities. The United States asserts that it may recover the amount of any assets fraudulently transferred to Walters pursuant to the Oklahoma Uniform Fraudulent Transfer Act ("OUFTA"), Okla. Stat. tit. 24, § 112, *et seq.* Count 2 is referred to as the "transferee liability" claim.[2] In Count 3, entitled "Breach of Contract and Fiduciary Duties," the United States alleges "in the alternative that it is an intended third party beneficiary of the [Trust] and entitled to damages for Walters' breach of the Trust." (Compl. ¶ 67.) Finally, also in the alternative, the United States requests that the Court impose a constructive trust on any remaining

---

[2] The Complaint did not set forth a statutory basis for the transferee liability claim. However, in subsequent briefing, the United States has clarified that such claim is brought under OUFTA. *See generally United States v. Verduchi*, 434 F.3d 17, 20 (1st Cir. 2006) ("[I]f the government seeks to recover a debtor's tax deficiency in the form of a judgment against the transferee, state law applies to set the amount of recovery.").

assets of the Trust. Walters filed a counterclaim, alleging that the United States has, since 1980, harassed him and violated his constitutional rights.

On February 17, 2011, the Court denied Walters' motion to dismiss, holding that (1) the United States' transferee liability claim was not subject to federal deficiency notice requirements; (2) the United States' transferee liability claim was not barred by certain state or federal statutory limitations periods; (3) the Complaint sufficiently pled facts establishing the United States' standing to assert claims for breach of the Trust Agreement and breach of fiduciary duties; and (4) the United States was not bound by the statute of limitations governing state-law breach of fiduciary duty claims. On February 24, 2012, the Court granted the United States' motion to dismiss Walters' counterclaim, holding that the United States was immune from suit.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient  to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing

the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

### III.    Transferee Liability Claim

The parties filed cross motions for summary judgment on the transferee liability claim. Both motions are addressed simultaneously in this section.

#### A.    Statute of Limitations Defense

Assuming that the ten-year statute of limitations in 26 U.S.C. § 6502 applies to the transferee liability claim, the Court finds that the United States' claim is not time-barred. The statute provides:

> (a) Length of period. – Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
> (1) within 10 years after the assessment of the tax . . . .

26 U.S.C. § 6502(a)(1). The relevant tax assessment in this case is the 2003 Tax Assessment, which was entered pursuant to stipulation by Spencer on April 28, 2003. The 2003 Tax Assessment, and not the 1998 Tax Examination Letter, started the statute of limitations clock. *See United States v. Spence*, 242 F.3d 392, at * 3 (10th Cir. 2000) (listing March 29, 1989 as date of "first assessment against the taxpayers," despite that "Tax Examination Changes" document was sent to debtors on June 23, 1998).[3] This suit was filed on April 13, 2010, within ten years from the 2003 Tax Assessment.

---

[3] The June 23, 1998 date is set forth in the underlying district court decision, which was overruled on other grounds on appeal. *See United States v. Spence*, 110 F. Supp. 2d 1335, 1338 (D.N.M. 1999).

**B.    "Claim Splitting" Defense**

Walters argues that the Court should dismiss the entire case based on the doctrine of "claim splitting," which is a discretionary doctrine permitting district courts to "control their dockets by dismissing duplicative actions." *See Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) ("The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.") (explaining that "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments"). The United States has not filed any prior litigation against Walters, nor has the United States alleged in any prior litigation that Spencer fraudulently transferred assets to Walters. In the 2005 State Court Action, filed by Spencer against Walters, the United States simply filed a notice of levy. The 2009 Federal Action, filed by Caton against the United States, involved the United States' collection efforts against Caton. There is no "duplicative action," and the "claim splitting" doctrine is not implicated.

**C.    OUFTA - General Law Governing Transferee Liability**

The OUFTA is patterned after the Uniform Fraudulent Transfer Act ("UFTA"). The UFTA "creates a comprehensive scheme that is designed to protect a debtor's assets from being depleted to the prejudice of creditors." Steven Shareff, Annotation, *Cause of Action to Set Aside or Recover for Fraudulent Transfer or Obligation Under Uniform Fraudulent Transfer Act*, 26 Causes of Action 773, § 2 (1991) [hereinafter Shareff]; *see Farm Credit Bank of Wichita v. Woodring*, 851 P.2d 532, 538 (Okla. 1993) ("The purpose of the Fraudulent Transfer Act is to allow a creditor the opportunity to invalidate a transfer of assets made by a debtor if the transfer has the effect of placing the assets out of the reach of present and future creditors."). "The typical fact pattern is that in which a debtor

9

conveys an asset or incurs an obligation and thereby impairs creditors' ability to satisfy claims against the debtor." Shareff, § 2.

A cause of action under the UFTA "may be based on actual fraud, i.e., the debtor's actual intent to delay, hinder, or defraud a creditor; constructive fraud, i.e., transfers that are voidable irrespective of the parties' intentions; or transfers representing an insider preference." *Id.* Under the UFTA, a creditor can seek to (1) void the fraudulent transfer, or (2) obtain a money judgment against a first transferee or a subsequent transferee of the asset. *See id.* at § 1; *see also* Okla. Stat. tit. 24, §§ 119, 120 (providing remedies to creditor in event of fraudulent transfer). When a creditor seeks to recover against a transferee, rather than simply void the transfer, the transferee is entitled to certain defenses. The nature and scope of these defenses differs depending on whether the transferee is a "first transferee" or a "subsequent transferee" of the fraudulently transferred asset. *See* Shareff, at §§ 12, 13; Okla. Stat. tit. 24, § 120(B).

### D. Prima Facie Case

In this case, the United States alleges that Spencer committed actual fraud in transferring assets to Walters because Spencer had the intent to delay, hinder, or defraud the IRS. *See* Okla. Stat. tit. 24, § 116(A)(1). The prima facie elements of this claim are: (1) Spencer made a transfer of assets; (2) the United States was a creditor of Spencer; and (3) Spencer made the transfer with actual intent to hinder, delay, or defraud any creditor. Shareff, at § 3; Okla. Stat. tit. 24, § 116(A)(1). The second element is not disputed. The Court will address the first and third elements.[4]

---

[4] As part of its prima facie case, the United States need not prove that Walters acted with fraudulent intent to assist the debtor in completing the fraudulent act. *See generally* Shareff, § 3 (setting forth elements of prima facie case); *Thompson v. Hanson*, 239 P.3d 537, 541 (Wash. 2010) (relied upon by the United States) (holding that "[a] plain reading of the remedial provision indicates that creditors may seek relief from first transferees without regard to the

1.      **Transfer**s

Of the $610.000.00 that Spencer made available to Walters in the joint Bank One Account,

Walters actually withdrew $595,000.00.  The United States argues that this resulted in a total of

$595,000.00 in fraudulent transfers from Spencer to Walters.  This $595,000.00 is the amount the

United States seeks to recover from Walters, as an individual and as trustee of the Trust.  Walters

contends that the fraudulent transfer actually at issue is the $610,000.00 transfer from Caton to

Spencer.

First, the Court finds that the transfer from Caton to Spencer is not at issue in this litigation.

Walters devotes a large majority of his briefing to the legal proposition that the alleged fraudulent

transfer was from Caton to Spencer, such that Walters was a "subsequent" rather than "first"

transferee of the funds.  However, this characterization is not supported by the Complaint, the

parties' briefs, this Court's prior Orders, or the record evidence.  The only evidence possibly

supporting this position is the following testimony of  IRS agent Dale Baustert ("Baustert"):

> Q      Now, it's the – it's the $610,000 that Mr. Spencer, you say, transferred to Mr.
> Walters that's the fraudulent transfer –
> A      Right.
> Q      – here?  And that was the check from Evelyn Caton?
> Q      For $610,000?
> A      Yes.

(Baustert Dep., Ex. 75 to Pl.'s Mot. for Summ. J., at 25:24-26:8.)  This testimony is not conclusive

and is certainly not a binding admission by the United States that its lawsuit is about a transfer of

---

transferees' intent" and that "once a transfer has been found to be fraudulent, remedy is available
against transferees").  Although Walters' "good faith" is relevant to the affirmative defense
discussed *infra* Part III.C, *see generally In re Tiger Pet. Co.*, 319 B.R. 225, 235–36 (Bankr. N.D.
Okla. 2004) (discussing transferee's "good faith and for value" defense), Walters' fraudulent
intent is not an element of the United States' prima facie case.

assets from Caton to Spencer.  Baustert answered "yes" to whether the transfers were from Spencer

to Walters, and "yes" to whether "that was the check from Evelyn Caton for $610,000.00."  This is

not, in the Court's view, an admission that the relevant transfer was from Caton to Spencer.  The

circumstances here involve several transfers in fairly rapid succession – from Caton to Spencer,

Spencer to Walters, and Walters to others.  The deposition questions and answers are not sufficiently

precise to deem these answers a binding position that trumps all other statements by the United

States in its pleadings and briefs.  Further, there are no allegations or evidence that Caton acted with

fraudulent intent in transferring funds to Spencer, or that Caton is a debtor seeking to avoid

creditors.  The Court concludes, for purposes of the transferee liability claim at issue, that Spencer

is the debtor/transferor and Walters is the first transferee.  Thus, the Court rejects any and all

arguments premised on the fact that the relevant "transfer" was from Caton to Spencer.[5]

Second, the Court concludes that two "transfers" from Spencer to Walters occurred as a

matter of law.  The OUFTA defines transfer as "every mode, direct or indirect, absolute or

conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an

asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."

Okla. Stat. tit. 24, § 113(12).  The first step of the relevant transfers occurred when Spencer

deposited or caused to be deposited the $610,000.00 into the joint Bank One Account immediately

prior to his incarceration, designated Walters as a joint owner of the account, made the funds

available to Walters, and expressed his intent for Walters to take dominion and control over the

---

[5]  Thus, the Court rejects Walters' argument that the transferee liability claim is
precluded by the 2009 Federal Action.  (*See* Def.'s Mot. for Summ. J. 17 ("To the extent the
fraudulent transfer alleged in this case is the $610,000 check from Evelyn Caton to Anthony
Spencer, this matter has been fully litigated and resolved in [the 2009 Federal Action].").)

funds for investment purposes. The second steps of the transfers occurred when Walters: (1) withdrew $495,000.00 from the Bank One Account; and (2) withdrew $100,000.00 from the Bank One Account. These undisputed circumstances constitute "transfers" under the OUFTA as a matter of law. *See Bishop v. Patton*, 706 S.E.2d 634, 641 & n.6 (Ga. 2011) (applying Georgia version of UFTA and holding that, where debtor was arrested for murder, debtor's son's withdrawal of $250,000 from joint account three days following father's arrest constituted "transfer" of funds) ("The definition of a 'transfer' is broad enough to encompass a co-owner's withdrawal of funds from a joint bank account."). In this case, the "transfers" are even more apparent because Walters was made a co-owner of the account for the sole purpose of accomplishing the transfers. There are no genuine disputes of fact, and the United States has established the "transfer" element of its prima facie case.

### 2. Fraudulent Intent

In determining whether Spencer, the debtor, had the actual intent to hinder, delay, or defraud, the Court may consider, among other factors, whether:

1. the transfer or obligation was to an insider;
2. the debtor retained possession or control of the property transferred after the transfer;
3. the transfer or obligation was disclosed or concealed;
4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. the transfer was of substantially all the debtor's assets;
6. the debtor absconded;
7. the debtor removed or concealed assets;
8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Okla. Stat. tit. 24, § 116(B). Any one of these factors, which are called badges of fraud, may "stamp the transaction as fraudulent." *Land O'Lakes Inc. v. Schaefer*, 3 Fed. Appx. 769, 772 (10th Cir. 2001) ("A single [badge of fraud] may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."). "When a plaintiff establishes the presence of sufficient badges of fraud, he or she is entitled to a presumption of fraudulent intent. Thereafter, the burden shifts to the transferee to show some legitimate supervening purpose for the transfers." *In re Lexington Oil and Gas Ltd., Co.*, 423 B.R. 353, 372 (Bankr. E.D. Okla. 2010) (internal quotations omitted). "The determination of whether fraudulent intent is present is a factual one done on a case-by-case basis." *Id.*

The Court concludes that the two transfers of funds from Spencer to Walters totaling $595,000.00 were fraudulent as a matter of undisputed fact and law, within the meaning of the OUFTA. First, the Oklahoma Supreme Court has stated that a "transfer of property into a trust or in the creation of a trust to evade creditors is subject to the Fraudulent Transfer Act." *Farm Credit Bank of Wichita*, 851 P.2d at 538. Thus, the fact that $495,000.00 of the $595,000.00 transferred from Spencer to Walters was ultimately deposited into the Trust Account does not protect the funds from the OUFTA's transferee liability provisions.

Second, there exists undisputed direct and circumstantial evidence of Spencer's fraudulent intent. One month prior to his incarceration, Spencer received notice that he owed the IRS over $450,000.00. Pursuant to a divorce settlement prior to his incarceration, Spencer possessed sufficient funds to cover his tax liability. Rather than pay his tax liability, Spencer created the Trust

and gave Walters control over his "entire worth." Spencer stated in his deposition that he created the Trust to protect the money from "everybody," including the IRS, and to delay the IRS' collection of taxes that he owed. Specifically, Spencer testified:

> Q. When did the idea of a trust come about?
> A. It came about when I had my - - I realized that I had $600,000 coming to me and that I wasn't going to be able to save my marriage and that I had nobody really to take care of that money and I needed somewhere to put it to where it would be safe and maybe expand.
> Q. What do you mean "safe"? Safe from what?
> A. Safe from everybody.
> Q. Does "everybody" include the IRS?
> A. Yes.
> Q. Okay.
> A. I wanted the money to get big enough to pay my tax debt.
> Q. Were you scared if you didn't put it in trust the IRS would come and get it somehow?
> A. Yes.
> Q. And so was the purpose of the trust to at least delay their coming to get it?
> A. I wanted it – yes. I wanted to do something to where we could make it as – more, because it wasn't going to be enough to pay the debt.
> . . .
> Q. Okay. Did he give you the impression that through the trust you could maybe just delay things a little bit?
> A. That's correct, sir. That was the feel I got.
> Q. And is that why you agreed to put the money in the trust?
> A. I wanted as much time as possible to get as much money as possible.

(Spencer Dep., Ex. A to Pl.'s Mot. for Summ. J., at 82:8-83:10, 190:7-190:19.) This is a rare case in which the debtor has admitted his intent to delay collection of the debt, and there is no need to rely upon "badges of fraud" to prove intent. Nonetheless, the undisputed facts implicate the fourth, fifth, and ninth "badges of fraud" above – namely, that "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;" that "the transfer was of substantially all the debtor's assets;" and that "the debtor . . . became insolvent shortly after the transfer was made." Okla. Stat. tit. 24, § 116(B)(4)-(5), (9). The undisputed direct and

15

circumstantial evidence establishes at least one statutorily enumerated type of fraudulent intent under the OUFTA – namely, an intent to delay a creditor's collection of a known debt.

To negate fraudulent intent, Walters relies upon the terms of the Trust Agreement and Spencer's testimony that his ultimate goal in transferring funds was to accumulate more funds to pay future tax bills. Walters also relies upon his prompt disclosure of the Trust to the IRS. Walters is correct that this is not a case involving concealment. Nonetheless, the OUFTA expressly includes the term "delay" in its list of prohibited intentions, and such term must be given statutory meaning. Therefore, even assuming Spencer had the laudable goal of multiplying wealth to pay the "suck-ass bastards" at the IRS, this is irrelevant if he also had the intent to delay collection of their debt. As a debtor, Spencer could not make the decision to delay the IRS' access to his funds, even if he did so with the goal of accumulating more wealth to pay the debt. This is a case in which the United States has offered clear testimony by the debtor as to his intent – to protect his money, grow his money, and delay the IRS' collection of his money. Spencer had the ability to pay the entirety of the debt then owed but nonetheless transferred the funds to Walters. The Court finds that Spencer acted with fraudulent intent to delay collection of a debt and that the United States has established its prima facie case as a matter of law. *See In re Potter*, No. 7-05-14071, 2008 WL 5157877, at * 7 (Bankr. D.N.M. July 29, 2008) (granting summary judgment on issue of fraudulent transfer under either New Mexico or California version of the UFTA where (1) debtor had $600,000 judgment against him when trust was formed; (2) debtor transferred all of his assets to trust; (3) stated purpose of trust was to provide maintenance for the debtor and fund litigation; and (4) despite language in trust stating that its purpose was not to defraud creditors, the clear purpose of the trust was to hinder or delay collection of the $600,000 judgment) (holding that the goal of gaining additional time to

pursue litigation was "not a legitimate, supervening purpose sufficient to negate the fraudulent nature of the transfers").[6]

### E.     Good Faith and For Value Defense

For a "subsequent transferee," the "good faith and for value" defense is a *complete* defense that precludes recovery.  *See* Okla. Stat. tit. 24, § 120(B)(2); Shareff, at § 13.  For a first transferee, the "good faith and for value" defense is a *partial* defense that permits the transferee to reduce the amount of his liability by the amount of value he gave for the fraudulently transferred asset.  *See* Okla. Stat. tit. 24, § 120(D)(3); Shareff, at § 13.  The Court has rejected Walters' argument that he was a subsequent transferee.  Nonetheless, the Court will analyze this defense for purposes of determining if it limits Walters' liability in any manner.

In order to establish the "good faith" element of the defense, a transferee must show that he did not participate in or have actual knowledge of the fraud.  Shareff, at § 13; *In re Schneider*, 417 B.R. 907, 916 (Bankr. N.D. Ill. 2009) ("Clearly, an active participant in the fraud does not possess good faith.") (applying Illinois version of UFTA).  A transferee must also show that he was not on "inquiry notice" of the fraud.  *Shareff,* at § 13; *In re Schneider*, 417 B.R. at 916 ("[T]here is an absence of good faith when transferees knew or should have known from the things going on in the transferor's life that the transfer was suspicious.").  Under this objective standard, if the circumstances surrounding the transfer "would place a reasonable person on inquiry of a debtor's

---

[6]  The Court rejects Walters' argument that the above conclusion is somehow precluded by the 2005 State Court Action filed by Spencer against Walters.  (*See* Def.'s Resp. to Pl.'s Mot. for Summ. J. 21 (arguing that "the question of the nature of the transfers by Defendant Walters have been determined not to be fraudulent").)  The "fraudulent transfers" at issue in the 2005 State Court Action were Walters' alleged fraudulent transfers from the Trust Account, and the United States was not a party to that action.

fraudulent purpose, and if a diligent inquiry would have discovered the fraudulent purpose," then the transferee is not entitled to the good faith defense. *In re Tiger Pet. Co.*, 319 B.R. at 235; *see also Warfield v. Byron*, 436 F.3d 551, 559-60 (5th Cir. 2006) (explaining that, under the UFTA, court examines what transferee objectively knew or should have known at the time of the transfer); Shareff, at § 13 ("A transferee who has notice of facts and circumstances that would incite the suspicion of a prudent person is charged with knowledge of all facts that a reasonable inquiry would reveal.").

The Court concludes, as a matter of law, that Walters knew or should have known that Spencer had a fraudulent purpose in creating the Trust and transferring $595,000.00 to him. As explained above, the OUFTA's definition of fraud includes an intent to delay collection of a debt. Walters was aware of (1) Spencer's impending incarceration for tax evasion; (2) Spencer's desire to "protect" his money via the Trust; (3) Spencer's intention to permit Walters access to the funds for investment purposes; and (4) the amount of Spencer's tax liability and that it was due and owing. Spencer expressly stated that he desired to invest his "entire worth," necessarily resulting in delay of any debt-collection efforts. A reasonable person in Walters' position would not have advised Spencer to create a trust under these circumstances and/or would not have agreed to create such a trust at Spencer's request. When a convicted tax evader facing imprisonment states his intent, at the time of transfer, of making "enough money to pay off [those] suck-ass [IRS] bastards or blow it all trying," a reasonable trustee/investor is on at least inquiry notice of fraudulent intent.[7] Walters cannot establish good faith and therefore cannot establish this defense as a matter of law. *See Cadle*

---

[7] The evidence could also show that Walters and Spencer acted in concert to deprive the IRS of its funds, but such a finding is not necessary to hold Walters liable as a first transferee of fraudulently transferred funds.

*Co. v. Schultz*, 779 F. Supp. 392, 401-02 (N.D. Tex. 1991) (denying motion to dismiss where the plaintiff alleged that defendants knew or should have known of the judgment against the debtor, that any assets of the debtor could be used to satisfy the judgment, and the defendants could infer that the debtor was transferring his assets to avoid paying the judgment); *In re Potter*, 2008 WL 5157877, at * 11 (finding that trustee who assisted in formation of trust with fraudulent purpose was not a good faith transferee).[8]

**F.      Amount of Transferee Liability Judgment**

Walters argues that the amount of any transferee liability judgment must be limited to $495,552.84, the amount of the tax debt at the time of the fraudulent transfer, as set forth in the 1998 Letter.  The United States argues that it is entitled to the entire $595,00.00 because such amount is less than the present value of Spencer's tax liability.

The relevant portions of the OUFTA provide:

B. Except as otherwise provided for in this section, to the extent a transfer is voidable in an action by a creditor pursuant to the provisions of paragraph 1 of subsection A of Section 8 of this act, the creditor may recover judgment for [1] the value of the asset transferred, as adjusted in accordance with the provisions of subsection C of this section, or [2] the amount necessary to satisfy the creditor's claim, whichever is less. . . .
C. If the judgment provided for in subsection B of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

Okla. Stat. tit. 24, § 120.  Thus, a creditor may recover the lesser of (1) the value of the asset transferred at the time of transfer, subject to equitable adjustments; or (2) the total amount necessary to satisfy the creditor's claim at the time the creditor seeks judgment against a transferee.  In this

---

[8]  Because Walters cannot establish good faith, the Court does not reach the second element of this defense.

case, these two amounts are: (1) $595,000.00, the value of the cash transfers from Spencer to Walters; and (2) $882.991.07, which is the 2003 Tax Assessment plus interest accrued through 2011. The United States may recover the lesser of these two amounts, or $595,000.00.

Walters appears to argue that the second amount – the amount necessary to satisfy the creditor's claim – must be reduced to a time-of-transfer value, such that the second number should be reduced to the $459,552.84 set forth in the 1998 Tax Examination Letter. (*See* Def.'s Resp. to Pl.'s Mot. for Summ. J. 23 (""[A]t the time of the transfer . . ., the IRS proposed tax liabilities in the amount of $459,552.84, . . . . [and] Defendant can only seek the value of the property at the time of the transfer to the extent of the claim, i.e. $495,552.84.").) However, this argument reflects a misapprehension of the law. It is only the first number – the value of the asset transferred – that is given a time-of-transfer value. *See* Unif. Fraudulent Transfer Act § 8 cmt. 3, 7A U.L.A. 654 (2004) (citations omitted) ("The measure of the recovery of a defrauded creditor against a fraudulent transferee is usually limited to the value of the asset transferred at the time of the transfer. The premise . . . is that changes in value of the asset transferred that occur after the transfer should ordinarily not affect the amount of the creditor's recovery."). In this case, $595,000.00 is the time-of-transfer value of the fraudulently transferred funds. The second number – the amount of the creditor's claim – may properly include interest accrued from the date of the fraudulent transfer. *See United States v. Verduchi*, 434 F.3d 17, 25 (1st Cir. 2006) (explaining that tax debt owed by debtor included interest and that the debt was large because the debtors "stalled payment of the taxes they owed for over fifteen years"); *Valvanis v. Milgroom*, No. 06-00144, 2009 WL 1561571, at * 13 (D. Haw. June 1, 2009) (comparing value of asset at time of transfer to "the amount of the [] judgment as of today" and calculating interest accrued since the time of judgment).

Walters also argues that (1) any judgment should be reduced by $243,000.00, which is the amount the United States recovered from Caton in the settlement of the 2009 Federal Action; and (2) any judgment should be reduced by payments made or payments promised by Spencer pursuant to an installment agreement entered into between Spencer and the United States. (Def.'s Resp. to Pl.'s Mot. for Summ. J. 24.) The United States did not, to the Court's knowledge, respond to these two arguments.

## IV. Conclusion

This Opinion and Order only reaches the transferee liability claim.[9] The Court concludes: (1) Spencer fraudulently transferred $595,000.00 to Walters when Walters withdrew $495,000.00 and $100,000.00 from the Bank One Account; (2) Walters, either individually or as trustee of the Trust, was the first transferee of the fraudulent assets; (3) Walters is not entitled to the "good faith and for value" defense to the transferee liability claim;[10] (4) the transferee liability claim is not precluded by the doctrines of claim splitting, claim preclusion, or issue preclusion; and (5) the United States' claim against Spencer exceeds $595,000.00.

The Court orders additional briefing on two issues related to the entry of judgment. First, the Court orders additional briefing on the question of whether and to what extent any judgment on the transferee liability claim should be against Walters in his individual capacity, his capacity as trustee of the Trust, or both. Second, the Court orders additional briefing on the argument raised by Walters on page 24 of his response brief regarding reductions to the judgment. The United States

---

[9] The remaining claims were pled in the alternative, and the Court does not reach these claims at this time.

[10] This finding is distinct from the question of whether Walters breached any contract or fiduciary obligations as trustee of the Trust, and the Court makes no findings in this regard.

shall be permitted to file a supplemental brief addressing these issues no later than October 17, 2012.

Walters shall be permitted to file a supplemental response brief no later than October 26, 2012.  The

pretrial conference, trial date, and all remaining scheduling order deadlines are stricken, to be reset

if necessary following the supplemental briefing and Court's rulings thereon.

**IT IS SO ORDERED this 2nd day of October, 2012.**

**TERENCE KERN**
**United States District Judge**