IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  10-CV-229-TCK-PJC |
| | ) |
| PATRICK G. WALTERS, individually and as | ) |
| Trustee of the Spencer Irrevocable Trust, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

On October 2, 2012, the Court held that the United States was entitled to a $595,000

judgment on its transferee liability claim.[1]  (*See* Doc. 80 ("10/2/12 Order").)[2]  The Court ordered

supplemental briefing on two questions: (1) whether and to what extent any judgment on the

transferee liability claim should be against Walters in his individual capacity, his capacity as trustee

of the Trust, or both; and (2) whether the judgment should be reduced by amounts recovered by the

United States in other litigation or amounts paid to the United States by Spencer.  The parties

submitted their supplemental briefs, and this Opinion and Order is intended to supplement the

10/2/12 Order.

## I.      Supplemental Briefing

### A.      Individual Liability

The United States makes four arguments supporting imposition of personal liability against

Walters on the transferee liability claim: (1) Walters is personally liable because he received the

---

[1]  The United States also has a claim for "breach of contract and fiduciary duties."  The
United States did not move for summary judgment on this claim.

[2]  The 10/2/12 Order is incorporated herein by reference, and this Opinion and Order
assumes knowledge of its terms and holdings.

fraudulently transferred funds as an individual ("factual argument"); (2) Walters is personally liable even if he received the fraudulently transferred funds in his capacity as a trustee ("legal argument"); (3) the Court may hold Walters personally liable based on its equitable powers under the OUFTA's enforcement provisions ("equitable argument"); and (4) Walters is personally liable because he breached fiduciary duties to the United States ("self-dealing argument"). Walters substantively responded to the factual, legal, and equitable arguments. Walters argued that the self-dealing argument is beyond the scope of the Court's order for supplemental briefing and should not be considered. (*See* Defs' Supp. Resp. 7 ("This matter has not been presented to the Court via summary judgment, the Defendant has not had the opportunity to fully respond to any such assertion, and this Court has expressly reserved ruling upon this second cause of action.").)

The United States elected to move for summary judgment on the transferee liability claim only. The United States also presented facts regarding Walters' self-dealing; however, self-dealing by the transferee is not an element of a transferee liability claim under the OUFTA. All that is required is fraudulent intent of the transferor, including an intent to delay payment to a creditor. In ruling in favor of the United States on its transferee liability claim, the Court expressly declined to reach questions of bad faith or self-dealing by Walters and also declines to do so now. The question before the Court is whether the United States is entitled to an individual judgment against Walters on its transferee liability claim, assuming Walters acted as a good-faith trustee. Therefore, this Opinion and Order only addresses the factual, legal, and equitable arguments and does not address the self-dealing argument.

### 1.    Factual Argument

In the 10/2/12 Order, the Court explained the two-step process of the fraudulent transfers at issue.  The fraudulent transfers necessarily occurred in two steps because Spencer's mere deposit into the Bank One Account, which he also owned, could not be considered a "transfer" to Walters. The second step occurred when Walters withdrew the funds.  The United States argues that Walters had access to the Bank One Account as an individual and that personal liability attaches regardless of whether the funds ever became Trust assets.  It is correct that Spencer added Walters to the Bank One Account without limiting language after his name, such as "as Trustee of the Spencer Irrevocable Trust."  However, Spencer added Walters to the Bank One Account, wrote the 10/27/98 Letter, created the Trust, and executed the Trust Agreement within a one or two-day time frame. Under these circumstances, the individual name on the Bank One Account does not convince the Court that every withdrawal from the Bank One Account subjected Walters to personal liability. Instead, the Court will consider the facts surrounding the two withdrawals (*i.e.*, step two of the fraudulent transfers).

With respect to the $495,000 withdrawal, this amount was payable to the Trust, deposited into the Trust Account, and allegedly invested by Walters as trustee.  The Court is unwilling to subject Walters to personal liability based solely on his "access" to the account as an individual, where the withdrawal was payable to the Trust and deposited into the Trust Account.  In contrast, with respect to the subsequent $100,000 withdrawal, which was made payable to Joe Branscum for "investment stock," the Court finds that personal liability must be imposed.  These funds never made their way to the Trust Account and never became assets of the Trust.  Therefore, even assuming the "investment" was made by Walters as trustee and on Spencer's behalf, it would be illogical to

3

require a transferee liability judgment to be paid from Trust assets.  Based on the United States'

factual argument regarding Walters' status at the time of withdrawing the funds, the United States

is entitled to judgment against Walters in his individual capacity in the amount of $100,000.

### 2.     Legal Argument

The Court must now consider whether the United States is entitled to a personal judgment

against Walters for the remaining $495,000 based on its legal or equitable arguments.  The United

States contends that a trustee may always be held personally liable as an initial transferee of a

fraudulently transferred asset under the OUFTA or its equivalent under the bankruptcy code.  As

acknowledged by the United States, there exists conflicting law on this question.  *Compare In re*

*Newman*, 140 B.R. 495, 499 (Bankr.  E.D. Wis.  1992) (addressing bankruptcy equivalent of

OUFTA transferee liability provisions) (holding trustee personally liable for $19,643.12 as initial

transferee of fraudulently transferred asset, even where assets of trust had been distributed and trust

terminated before adversary proceeding was filed) (but noting that the trust agreement itself did not

limit trustee's personal liability and that Wisconsin law supported imposition of personal liability),

*with In re Mastro*, 465 B.R. 576, 616 (Bankr. W.D. Wash. 2011) (rejecting reasoning of *In re*

*Newman*) (concluding that, generally, "a trustee should not be personally liable as an 'initial

transferee' under [the bankruptcy equivalent of the OUFTA provision at issue in this case]) ("[A]

trustee should be liable only in its capacity as trustee, and should draw from the corpus of the trust

to satisfy its liability. Were the law applied otherwise, it would be an unduly broad and inequitable

expansion of transferee liability.").

The Court declines to follow *Newman* for three reasons.  First, the Court finds *Mastro* to be

the better reasoned decision.  Second, the Trust Agreement in this case at least arguably limits

Walters' personal liability, rendering the facts distinguishable from *Newman*.  (*See* Pl.'s Mot.  for

Summ.  J., Ex.  17, at Art. VII(D) ("The Trustee shall be deemed to have acted within the scope of

the Trustees' authority, to have exercised a trust to achieve a huge rate of return.  The Trustee is not

liable for any loss.").)  Finally, in contrast to Wisconsin law, Oklahoma law generally does not

permit individual liability against a trustee.  *See* Okla.  Stat.  tit.  60, § 124 ("Liability to third

persons for any act, omission, or obligation of a trustee or trustees of an express trust when acting

in such capacity, shall extend to the whole of the trust estate held by such trustee or trustees, or so

much thereof as may be necessary to discharge such liability, but no personal liability shall attach

to the trustee or the beneficiaries of such trust for any such act, omission or liability.").  Therefore,

the Court is unwilling to hold that trustees are always personally liable for an "initial transferee"

liability judgment under the OUFTA.

### 3.    Equitable Argument

The United States also urges the Court to impose individual liability under the OUFTA's

equitable provision:

> A. In an action for relief against a transfer or obligation pursuant to the provisions
> of the Uniform Fraudulent Transfer Act, a creditor, subject to the limitations of
> Section 9 of this act, may obtain:
> 1.    [avoidance of transfer]
> 2.    [an attachment or other provisional remedy against asset transferred]
> 3.    subject to applicable principles of equity and in accordance with applicable
>       rules of civil procedure:
>       a. an injunction against further disposition by the debtor or a transferee of the
>       asset transferred or of other property, or
>       b. appointment of a receiver to take charge of the asset transferred or of other
>       property of the transferee, or
>       c. *any other relief the circumstances may require.*

Okla. Stat. tit. 24, § 119(A) (emphasis added and footnotes omitted).  The United States argues

that a judgment against Walters solely in his capacity as trustee would not remedy the wrong

committed against the United States and that Walters' bad-faith conduct justifies imposition of personal liability in this case. Walters argues that the Court cannot impose any equitable remedy that is contrary to law, as set forth in Part II.

The Court is unwilling to invoke its equitable powers on the transferee liability claim at this juncture, without a full presentation of evidence regarding Walters' breaches of fiduciary duty, bad faith, and/or self-dealing. Although the summary judgment briefing on the transferee liability claim includes facts regarding how Walters expended the $495,000, such facts were not clearly relevant to such claim. Nor did Walters have sufficient notice that he needed to defend the claims of bad faith and self-dealing in order to preclude an individual liability judgment against him. Under these circumstances, the Court finds it procedurally improper to invoke equity and impose personal liability. The Court does not, however, preclude the possibility of imposing individual liability based on equitable considerations after considering all evidence regarding Walters' conduct. The Court simply finds that the United States is not entitled to summary adjudication on this question.

**B.     Reductions to Judgment**

The parties agree that any payments by Spencer to the United States do not reduce any judgment against Walters. The parties still disagree, however, as to the $243,000 received by the United States as a settlement in litigation against Caton. The United States argues that there should be no reductions because its total claim, less the $243,000, exceeds the total judgment sought against Walters. Walters argues that the United States improperly "applied [the $243,000] to the interest and penalty rather than reducing the value of the asset at the time of transfer." The United States has not been afforded an opportunity to reply to this argument, and the Court intends to allow it to

do so. Because this case will proceed to trial, the Court reserves ruling on this question until entry of a final judgment.

### C. Conclusion

The United States is entitled to summary adjudication on its transferee liability claim as follows: (1) the United States is entitled to a judgment against Walters in his capacity as trustee of the Trust in the amount of $495,000; (2) and the United States is entitled to a judgment against Walters in his individual capacity in the amount of $100,000. The Court reserves ruling upon the question of whether the United States is entitled to a greater individual judgment against Walters based upon equitable considerations. The judgment will not be reduced by amounts paid by Spencer. The Court reserves ruling on the issue of reductions for amounts recovered in the Caton litigation.

### III. Walters' Motion for Summary Judgment

The United States has indicated that, in the event it does not recover summary judgment against Walters individually for the entire $595,000, it desires to further litigate the case on its breach of trust claim.[3] Therefore, the Court must now address Walters' motion for summary judgment on such claim.[4]

---

[3] Count 3 of the Complaint is styled as a "breach of contract and fiduciary duty" claim. Throughout its briefs, the United States refers to the claim as a "breach of trust" claim. Therefore, the Court also refers to Count 3 as a "breach of trust" claim.

[4] The Court was hopeful that its ruling on the transferee liability claim would lead to dismissal of the remaining claims and therefore did not reach Walters' motion for summary judgment on the remaining claims.

A.      **Count 3 - Breach of Trust**

Count Three of the Complaint alleges:

> The United States alleges in the alternative that it is an intended third party beneficiary of the Spencer Irrevocable Trust and entitled to damages for Walters's breach of the Trust.   The Spencer Irrevocable Trust created a binding and enforceable contract between Spencer and Walters.   The parties intended the trust agreement to benefit the United States as a third party, as evidenced, inter alia, by the fact that Spencer was entitled to the residue of the trust only "upon final payment of his income tax liability." By virtue of the trust agreement, Walters took on fiduciary responsibilities to prudently invest and protect trust assets in order to allow Spencer to pay his federal tax liabilities. Walters breached the Trust and his fiduciary duties by using the Trust assets for his own personal benefit. Walters breached the Trust and his fiduciary duties by mingling Trust and non-Trust assets.  Walters breached the Trust and his fiduciary duties by failing to provide an accounting of Trust assets to Spencer.  Walters breached the Trust and his fiduciary duties by failing to return any Trust assets or their proceeds to Spencer or the United States.

(Compl.  ¶¶ 67-74.)

Walters moves for summary judgment on this claim, arguing that liability is precluded by the following provision of the Trust Agreement:

> D.  Bond: No bond shall be required of any person, bank, or trust company serving as Trustees hereunder.  The Trustees shall be deemed to have acted within the scope of the Trustees' authority, to have exercised a trust to achieve a huge rate of return. The Trustee is not liable for any loss.

(Pl.'s Mot.  for Summ.  J., Ex.  17, at Art.  VII.D ("Exculpatory Provision").)  In response, the United States argues that the Exculpatory Provision (1) does not clearly release Walters from liability, in light of its placement and other provisions of the Trust Agreement; (2) should be construed strictly against Walters; and (3) cannot shield Walters from liability for bad faith, dishonesty, embezzlement, and/or failure to reasonably accomplish the purposes of the Trust.

For purposes of Walters' motion for summary judgment, the Court assumes the Exculpatory Provision is valid.  However, Walters is still not entitled to summary judgment.  Under Oklahoma

law, there are "limits upon all trustees, regardless of the latitude and discretion vested in them by the trust instrument." *Atwood v. Atwood*, 25 P.3d 936, 942 (Okla. Civ. App. 2001). A "trustee may not engage in criminal acts, or refuse to perform some trust directive, or engage in egregious conduct, such as fraud or malicious, intentional disregard for the rights of the Beneficiaries." *Id.*; *Robinson v. Kirbie*, 793 P.2d 315, 318 (Okla. Civ. App. 1990) ("Where the trustee breaches the trust by wasting, embezzling and/or converting trust property to the trustee's own use, the trustee is personally liable therefor."); *see also Atkinson v.  Pa. Shipbuilding Co.*, 255 F.  Supp.  2d 351, 404 (E.D. Pa.  2002) (noting the "well settled principle that no exculpatory provision in a trust instrument can permit a trustee to act in bad faith").

The United States has presented ample evidence to create questions of fact as to whether Walters engaged in egregious, bad-faith conduct and intentionally disregarded the rights of the United States as a beneficiary.  For example, of the $495,000 deposited into the Trust account, the evidence potentially shows that Walters loaned over $220,000 to two of his friends – James Clinton Garland and Kay Bridger-Riley. The evidence also potentially shows that both individuals were free to do what they chose with the money and that Walters directed them to pay the money back to him personally.  While Walters contends that these were "investments," the evidence is more than sufficient to create a question of fact.  The United States has also presented evidence that Walters personally received the "returns" on certain alleged investments, such as (1) personally receiving proceeds for the sale of a shopping mall he purchased out of bankruptcy with Trust assets, and (2) making an investment in a friend's business, contingent upon his own receipt of a yearly fee for providing tax consulting services.  Walters is not entitled to summary judgment on Count 3 of the Complaint.

### B.      Count 4 - Constructive Trust

In Count 4, the United States requests that the Court impose a constructive trust in favor of the United States on all property distributed to and from the Trust based on Walters' use of the Trust assets for his own personal benefit and Walters' unjust enrichment.  Walters moved for summary judgment on this specific claim under a separate heading in his motion, and the United States did not respond in any manner.  Further, in the briefs currently before the Court, the United States indicated its desire to further litigate the breach of trust claim, without mentioning the constructive trust claim.  Thus, this claim appears to be abandoned and/or confessed.

## IV.    Conclusion

For reasons set forth in this Opinion and Order and the 10/2/12 Order, the Court concludes as follows:

1.      Plaintiff's Motion for Summary or Partial Summary Judgment Against Patrick Walters (Docs.  40, 45) is GRANTED in part and DENIED in part.  The United States is entitled to a summary adjudication that Walters is (1) individually liable on the transferee liability claim in the minimum amount of $100,000; and (2) liable in his capacity as trustee of the Trust in the amount of $495,000.  The Court reserves ruling on the questions of whether (1) Walters' individual liability may be increased based on equitable provisions of the OUFTA; and (2) any final judgment must be reduced by amounts recovered in the litigation involving Evelyn Caton.  The parties' trial briefs should address both questions.

2.      Defendant's Motion for Summary Judgment (Doc.  48) is GRANTED in part and DENIED in part.  It is GRANTED as to Count 4 of the Complaint.  It is DENIED in all other respects.

3.      Plaintiff's Motion in Limine to Exclude Sandi Henderson as a Witness (Doc.  44) is

        GRANTED for good cause shown and based on Walters' failure to file a timely response.

4.      Plaintiff's Motion to Strike Jury Demand (Doc. 77) appears to be confessed based on

        Walters' failure to file a timely response.  However, the Court entered its 10/2/12 Order prior

        to running of Walters' response deadline, and the Court will permit Walters until November

        28, 2012 to respond to Plaintiff's motion to strike jury demand.  If nothing is filed, the

        motion will be deemed confessed and granted.

5.      **Trial is set for January 22, 2013 at 9:30 a.m.**  The Court will set other pretrial deadlines

        upon determining whether the only remaining count, Count 3, will be tried to the Court or

        a jury.

        **IT IS SO ORDERED this 20th day of November, 2012.**


        **TERENCE KERN**
        **United States District Judge**

11